**James A. FARINA and Lucille L. Farina, Plaintiffs,**

v.

**CITY OF TAMPA, FL., Officer Michael E. Nitch, Officer Lexxie V. Myrick, and Austin McLane, Defendants.**

**No. 94–445–CIV–T–24A.**

United States District Court, M.D. Florida, Tampa Division.

Dec. 13, 1994.

Robert M. Stoler, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for plaintiffs.

Peter Michael Walsh, City Attorney's Office, City of Tampa, Donald Aubrey Smith, Jr., Smith & Tozian, P.A., Daniel Raymond Kirkwood, Stull & Barber, P.A., Tampa, FL, for defendants.

## ORDER

JENKINS, United States Magistrate Judge.

THIS CAUSE comes before the Court on **Plaintiffs' Motion for Partial Summary Judgment as to Procedural Due Process Claims Against Defendants Nitch and Myrick** (doc. 43, filed October 19, 1994) and **Defendants' Myrick & Nitch's Motion for Summary Judgment in Response to Plaintiffs' Motion for Partial Summary Judgment** (doc. 55, filed November 28, 1994).[1] The issue raised by these motions is whether Plaintiffs were entitled to notice and a judicial hearing prior to Defendants' seizure and surrender of the child to the biological mother. The Court heard oral argument on the matter on December 1, 1994.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On or about October 1, 1990, biological parents Candice Jo Martin and Bruce Bachelor signed consent forms in Kansas "relinquish[ing] all right to exercise any control" over their minor child, Bradley Allen Thompson. The notarized forms also indicated that Ms. Martin and Mr. Bachelor "freely and voluntarily consent that [Plaintiffs] may legally adopt said minor child as their own child" and that they waived notice of any future adoption proceedings.

Plaintiffs had not finalized the adoption as of October 4, 1991, but had custody of the child in Tampa for approximately one year. On or about that date, Ms. Martin flew to Tampa and contacted the police. Defendants Myrick and Nitch met Ms. Martin at the residence of Plaintiff James A. Farina's parents, who were babysitting Bradley. Neither of Plaintiffs was present. Although Defendants' accounts of the incident differ, it is undisputed that, over Mr. Farina's parents' objections, Defendant Nitch ordered Mr. Farina's parents to surrender Bradley, and

---

1. The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Defendant Myrick physically delivered Bradley into Ms. Martin's custody. Ms. Martin was permitted to leave the premises, and she subsequently returned to Kansas. At some point in the events, Mr. Farina appeared, presented Defendant Nitch with the consent forms, and requested that he retrieve Bradley and contact HRS. Defendant Nitch refused and left the premises.

## II. *DISCUSSION*

■ Procedural due process questions are examined in two steps. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459, 109 S.Ct. 1904, 1907–08, 104 L.Ed.2d 506 (1989). The first step is determining whether there exists a liberty or property interest with which the State has interfered. *Id,* citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). The second step examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dept. of Corrections,* 490 U.S. at 459, 109 S.Ct. at 1907–08, citing *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States. *Hewitt,* 459 U.S. at 466, 103 S.Ct. at 868–69, citing *Meachum v. Fano,* 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976).

Plaintiffs contend that they had a liberty interest of entitlement to a judicial hearing pursuant to either § 63.082(5), *Fla.Stat.,* or § 61.131, *Fla.Stat.,* prior to being deprived of legal custody of Bradley. Plaintiffs contend that Bradley should not have been taken unless Ms. Martin's consent was properly revoked and that consent can only be properly revoked when there has been a judicial determination that the consent was originally obtained by fraud or duress. *Fla.Stat.* § 63.082(5). Alternatively, Plaintiffs argue

that Defendants should not have enforced an out-of-state custody award because Plaintiffs were not notified of any out-of-state proceedings on the issue of custody.[2] Plaintiffs conclude that the violation of their liberty interest constituted a violation of their procedural due process rights.

Defendants respond that Plaintiffs had no liberty interest of entitlement to a judicial hearing under § 61.131 because Plaintiffs only had physical, as opposed to legal, custody of Bradley at the time of the incident. Defendants conclude that they therefore did not violate Plaintiffs' procedural due process rights when they returned Bradley to Ms. Martin without affording Plaintiffs an opportunity to be heard.

Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). More specifically, the moving party "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

At the oral argument, Plaintiffs argued that no questions of material fact exist. Defendants responded that the parties are in dispute as to whether or not Plaintiffs had legal, as opposed to merely physical, custody of the child. However, the Court is not persuaded that the distinction between legal and physical custody is material to the procedural due process issue.

■ Defendants acknowledge that § 61.131, the "Notice and opportunity to be heard" provision of the Uniform Child Custody Jurisdiction Act (UCCJA), requires that:

> Before a decree [of an award of custody] is made under this act, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental

---

2. These alternative arguments are the result of the differing testimony presented by Defendants. According to Defendant Myrick, Ms. Martin presented police with an order from a Kansas state court, which purported to award custody to Ms. Martin. In his deposition, Defendant Nitch denied seeing such an order, but stated instead that

his decision to remove Bradley was based on Ms. Martin's representation that she was Bradley's biological mother and was revoking her consent and relinquishment of rights. However, in his internal memorandum, Defendant Nitch states that he did see a court order from Kansas.

rights have not been previously terminated, *and any person who has physical custody of the child.* If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to s. 61.1312.

(Emphasis added). Therefore, the statute clearly indicates an intent on the part of the legislature to afford certain rights to persons with physical custody. Pursuant to the statute, Plaintiffs were entitled to reasonable notice and an opportunity to be heard before Defendants determined that Bradley should be placed in Ms. Martin's custody.

Defendants cite no authority in support of their distinction between physical and legal custody for procedural due process purposes. Instead, Defendants' analysis examines whether Ms. Martin's parental rights had been terminated, exploring the validity of the consents under both Kansas and Florida law. However, Defendants never clarify how Ms. Martin's status affects Plaintiffs' statutory right as persons in physical custody of Bradley to notice and opportunity to be heard.

Defendants suggested at the oral argument that Plaintiffs would have enjoyed a liberty interest in a right to notice and hearing under § 63.082(5) had they simply initiated adoption proceedings. Section 63.082(5) provides that "Consent [to an adoption] may be withdrawn only when the court finds that the consent was obtained by fraud or duress." Although this provision is found within the adoption statute, Defendants provide no statutory language or case law to support their contention that adoption proceedings must be initiated before the provision applies. Consequently, Defendants' basis for such a position is unclear. The Court is therefore unpersuaded that the relevant procedural due process protections are unavailable until such time as adoption proceedings are instituted, a time that Defendants have seemingly chosen arbitrarily.

■ A State creates a protected liberty interest by placing substantive limitations on official discretion. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983). If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," the State has not created a constitutionally protected liberty interest. *Id.* (citations omitted). As noted above, § 61.131 requires that, "[b]efore a decree is made under this act, reasonable notice and opportunity to be heard *shall* be given to . . . any person who has physical custody of the child." "Shall" indicates that notice and an opportunity to be heard are mandatory, not discretionary. Furthermore, § 63.082(5) provides that "Consent may be withdrawn *only* when the court finds that the consent was obtained by fraud or duress." As with § 61.131, the need for a judicial determination is mandatory, rather than discretionary, as evidenced by the use of the word "only." Therefore, when determining who is entitled to custody or whether consent has been revoked, the right to notice and hearing is a protected liberty interest. Plaintiffs, as persons having both physical custody of Bradley and notarized, written consent forms signed by both biological parents, were entitled to that liberty interest.

■ Having determined that there existed a liberty interest with which the State interfered, the Court then turns to the second part of the procedural due process analysis and asks whether the procedures attendant upon that deprivation were constitutionally sufficient. The Court does not hesitate to answer that question in the negative. Defendants, Tampa police officers, took Bradley not only without first conducting a hearing, but apparently without conducting any reasonable inquiry. Although Defendants submit that they had no choice other than to turn over the child to the biological mother, the Court finds such an argument illogical. No one—not even Ms. Martin—contended then or contends now that Plaintiffs obtained or maintained custody of Bradley illegally. Plaintiffs clearly had some valid interest in Bradley, and the Court finds that Defendants, who clearly did not have all the facts at their disposal, should have maintained the status quo by allowing Plaintiffs to retain custody of Bradley, rather than deciding on the spur-of-the-moment to deliver Bradley to Ms. Martin. No balancing of interests or

exploration of facts such as would occur at a hearing was undertaken. There is no evidence that Defendant Nitch considered the issues of Kansas law versus Florida law, legal custody versus physical custody, valid consent versus invalid consent. Although it may ultimately be fortuitous for Defendants that these issues arose, it does not excuse their actions. Therefore, the procedures that Defendants undertook in lieu of notice and hearing were not constitutionally sufficient.

Having met both prongs of the two-part test for establishing a procedural due process violation, Plaintiffs are entitled to partial summary judgment as to this claim against Defendants Nitch and Myrick. Accordingly, it is

**ORDERED** that:

1) **Plaintiffs' Motion for Partial Summary Judgment as to Procedural Due Process Claims Against Defendants Nitch and Myrick (doc. 43) is GRANTED.**

2) **Defendants' Myrick & Nitch's Motion for Summary Judgment in Response to Plaintiffs' Motion for Partial Summary Judgment (doc. 55) is DENIED.**